```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
MICHAEL P. SMITH,                  )
                                   )
         Plaintiff,                )
                                   )
    v.                             )
                                   )      C.A. No. 19-192 WES
UNITED PARCEL SERVICE, INC.        )
and LOCAL 251 OF THE               )
INTERNATIONAL BROTHERHOOD          )
OF TEAMSTERS,                      )
                                   )
         Defendants.               )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

Before the Court is Defendant Local 251 of the International Brotherhood of Teamsters' Motion for Summary Judgment, ECF No. 13. Also before the Court is Defendant United Parcel Service, Inc.'s Motion for Summary Judgment, ECF No. 14. For the reasons set forth below, both Motions are GRANTED.

I.  Background

Plaintiff Michael P. Smith worked for Defendant United Parcel Service, Inc. ("UPS" or "the Company") as a casual package driver from June 2010 to October 2013, and as a full-time package driver from October 2013 until his discharge in December 2018. Def. United Parcel Service, Inc.'s Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ("UPS SUF") ¶¶ 1-2, ECF No. 15. As a UPS employee, he was represented by Local 251 of the International

Brotherhood of Teamsters ("Local 251" or "the Union"), and his employment was governed by the terms of a collective bargaining agreement ("CBA").[1]  Id. ¶¶ 1, 3-4.

While at UPS, Smith received a copy of the Company's Workplace Violence Prevention Policy, which guarantees employees a "safe working environment, free of threats, intimidation, and physical harm," and prohibits, on a "zero tolerance" basis, "physical assaults (fights), threatening comments [and] intimidation."  Id. ¶¶ 7-9.  He also received the Company's Professional Conduct and Anti-Harassment Policy, which prohibits "harassment" based on "disability," including "derogatory or other inappropriate remarks, slurs, threats or jokes."  Id. ¶ 11.  That policy also forbids "inappropriate physical contact."  Id.  Violation of either policy can be punished by disciplinary action up to and including termination without warning.  Id. ¶¶ 10, 12, 14, 17.

On November 30, 2018, Smith touched the head of Anthony Cipriano, a fellow UPS employee and Local 251 member, while they were taking a break at a Dunkin' Donuts in Providence, RI; Cipriano

---

[1]  The CBA has two parts: the National Master United Parcel Service Agreement ("Master Agreement") and the New England and United Parcel Service Supplemental Agreement ("Supplemental Agreement").  See Local 251's Add. of Exs. to Mot. for Summ. J. ("Union Add.") Exs. 1 and 2, ECF Nos. 13-5 and 13-6.  Much of the controversy in this case surrounds Article 59 of the Supplemental Agreement, which sets forth, among other things, cardinal offenses that justify termination without prior warning.  See Union Add. Ex. 2, Supplemental Agreement 207-08.

2

described this touch as a "smack," while Smith described it as a "tap." UPS SUF ¶¶ 18-26; Local 251's Statement of Undisputed Facts in Supp. of Mot. for Summ. J. ("Union SUF") ¶¶ 27, 32, ECF No. 13-4. Cipriano reacted by asking Smith, "Why did you hit me?" UPS SUF ¶ 21. Smith replied, "What do you mean why did I hit you?" Id. ¶¶ 34, 36; see Brown Cert. Ex. D, Smith Dep. 13:16-22, ECF No. 15-1. On December 5, Cipriano met with UPS R.I. Metro Business Manager Andy McLean and Union Chief Steward Thomas Salvatore, reporting that Smith had mocked his deafness and "hit" him in the ear with an "open-handed smack." Union SUF ¶¶ 6-27.

Later that day, Smith met with McLean, Salvatore, UPS Division Manager Matthew Duhoski, and Union Steward Corey Levesque. UPS SUF ¶ 25. Smith said that he had merely "tapped" Cipriano. Id. ¶ 26; Union SUF ¶ 32. He also acknowledged that Cipriano had responded to the "tap" by asking, "What did you hit me for?" UPS SUF ¶ 26. Duhoski explained UPS's "zero tolerance" policy for violence and announced Smith's immediate suspension as the situation was investigated. Id. ¶ 27; Union SUF ¶ 36.

On December 7, Cipriano submitted a written statement to UPS. UPS SUF ¶ 29; Union SUF ¶ 39. The statement asserted that Smith had struck Cipriano in the ear, that Smith mocked Cipriano's hearing disability, and that Smith harangued Cipriano as a "route killer" (one whose delivery speed causes the Company to raise its expectations regarding overall driver efficiency). UPS SUF ¶ 29.

3

On December 10, at a meeting with Salvatore, Levesque, and UPS Human Resources Representative Lisa Mertel, Cipriano repeated his charges against Smith; the meeting was memorialized in memorandum by Mertel. Id. ¶¶ 30-32; Union SUF ¶¶ 40-42. The next day, December 11, Mertel took statements from Medeiros and Thibault in the presence of their Union representatives (Levesque, Salvatore, and Business Agent Matthew Maini). UPS SUF ¶¶ 33-36; Union ¶¶ SUF 45-46. Neither Medeiros nor Thibault saw Smith touch Cipriano, but both heard Cipriano ask, "Why did you hit me?" UPS SUF ¶¶ 34, 36. Furthermore, both heard Smith reply, "What do you mean why did I hit you?" Id. On December 12, at a meeting meant to investigate whether Smith had violated the workplace violence and professional conduct policies, Smith again admitted that "he placed his hand on Cipriano's head". Id. ¶ 37-38; Union SUF ¶ 47. At the end of the meeting, Smith was told that he was terminated. UPS SUF ¶ 40; Union SUF ¶ 49.

On December 13, UPS terminated Smith for violating the Workplace Violence Prevention Policy and the Professional Conduct and Anti-Harassment Policy, UPS SUF ¶¶ 40-41, and subsequently sent Smith an official letter of termination, citing Article 50 of the CBA. Union SUF ¶ 52.

At Smith's behest, Local 251 filed a grievance for termination without just cause. Id. ¶ 50; UPS SUF ¶ 42. Maini requested Smith's employment and disciplinary records from UPS. Union SUF

4

¶ 51. The Local Level grievance meeting occurred on December 20. Id. ¶ 53. Smith attended, as did Maini and Salvatore for the Union and Duhoski and UPS Labor Relations Manager Glenn Steward for the Company. Id.; UPS SUF ¶ 46. At the meeting, Maini and Salvatore received Smith's records, which showed a long history of disciplinary issues.[2] Union SUF ¶¶ 54-57; UPS SUF ¶¶ 46-47. Among the documents was a "last chance" agreement, which Smith signed after being terminated and reinstated in 2015 for "dishonesty, overall work record and falsification of company documents." Union SUF ¶¶ 58-60; UPS SUF ¶¶ 49-50. At this meeting, Smith again admitted "tapping" Cipriano's head. Union SUF ¶ 62; UPS SUF ¶ 51. He also made previously unaired allegations concerning Cipriano's behavior: specifically, Smith claimed that Cipriano had mocked him for having a limp and that Cipriano was actively trying to steal his route. Union SUF ¶¶ 63-64; UPS SUF ¶ 52. Duhoski found Smith's claims incredible and Steward denied his grievance. UPS

---

[2] His offenses include failing to scan four packages that were not delivered or given away without a scan, Union Add. Ex. 12, Smith UPS Personnel File 12-056, ECF No. 13-16; leaving a package at a prohibited location and falsely claiming that the shipper overrode the prohibition, resulting in a theft and payout by UPS, id. at 12-049-054; being late for a commercial delivery, id. at 12-034-036; altering shipping addresses, id. at 12-025-033; inflating his mileage by some 120 miles, id. at 12-018-021; and signing packages for customers without permission, id. at 12-008-016. Furthermore, Smith was twice terminated by UPS and reinstated due to the Union's advocacy. Id. at 12-057-060, 12-054-055.

5

SUF ¶¶ 53-54.  Maini told Smith and Duhoski that the Union would probably not pursue arbitration.  Union SUF ¶ 67.

Maini and Salvatore subsequently briefed Matthew Taibi, who serves as Secretary-Treasurer and Principal Executive Officer of Local 251 and represents members at UPS as a Business Agent.  Id. ¶¶ 2, 69-73.  Taibi directed Maini to get another statement from Cipriano.  Id. ¶¶ 73-75.  Taibi and Maini then conferred about Smith's situation, with Taibi concluding that Smith's account was inconsistent and unbelievable, especially given his disciplinary record, whereas Cipriano's account was consistent and believable. Id. ¶¶ 76-96.  Taibi therefore made the decision not to pursue arbitration, which he considered futile.  Id. ¶¶ 98-99.  Taibi's decision was informed by a recognition that the Union was bound to defend Cipriano's interest in a safe workplace, and that Smith's actions gave UPS just cause for immediate discharge.  Id. ¶¶ 22-25, 97, 100.  On January 16, 2019, at Taibi's instruction, Maini wrote Smith a letter explaining that Local 251 would not take his grievance to arbitration.  Id. ¶¶ 102-04.

On April 10, 2019, Smith sued UPS and Local 251 in Rhode Island Superior Court.  See generally Compl., ECF No. 1-1.  Against the former he alleged breach of contract (Count I) and violation of the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 (Count III); against the latter he alleged breach of the duty of fair representation (Count II) and violation of RICRA

6

(Count IV).  See id. ¶¶ 28-47.  Both Defendants now move for summary judgment.  Local 251's Mot. for Summ. J., ECF No. 13; Def. United Parcel Service, Inc.'s Mot. for Summ. J., ECF No. 14.  The case was removed to this Court by Defendants on April 18, 2019.  Notice of Removal, ECF No. 1-2.

II.  Standard of Review

A court must grant a motion for summary judgment where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is genuine if it is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted).  An issue is material if it "has the capacity to sway the outcome of the litigation under the applicable law."  Id. (citation omitted).

Initially, the movant has the burden of showing the absence of any genuine issues of material fact based on "pleadings, depositions, answers to interrogatories, admissions, and affidavits".  Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010) (citing Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986)).  If the movant does so, the burden shifts to the nonmovant to demonstrate "with respect to each issue on which [he or she] would bear the burden of proof at trial . . . that a trier of fact could reasonably resolve the issue in [his or her] favor."

7

Id. (citing Celotex, 477 U.S. at 324).  This burden requires the nonmovant to proffer "specific facts" of "evidentiary value". Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005).  It is not enough for the nonmovant to rely on speculation and conclusory assertion.  See Town of Westport v. Monsanto Co., 877 F.3d 58, 66 (1st Cir. 2017).

Evidence must be considered in the light most advantageous to the nonmovant, with "reasonable inferences" drawn in that party's favor.  Noviello, 398 F.3d at 84.  However, such "indulgence" is limited by the nonmovant's "obligation to support the alleged factual controversy with evidence that is neither 'conjectural nor problematic.'"  Chiang v. Verizon New England, Inc., 595 F.3d 26, 34 (1st Cir. 2010) (internal quotation marks and alterations omitted) (quoting Nat'l Amusements, 43 F.3d at 735).

Finally, "any fact alleged in the movant's Statement of Undisputed Facts shall be deemed admitted unless expressly denied or otherwise controverted by a party objecting to the motion" in the form of a Statement of Disputed Facts.[3]  DRI LR 56(a)(3); see

---

[3] Smith did not file a Statement of Disputed Facts. Therefore, the Defendants' Statements of Undisputed Fact are "accept[ed] as true".  Bank of Am., N.A. v. Burt, No. CA06-394S, 2007 WL 1074742, at *3 (D.R.I. Mar. 30, 2007).  "Valid local rules are an important vehicle by which courts operate.[]  Such rules carry the force of law . . . and they are binding upon the litigants and upon the court itself".  Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994) (internal citation omitted).

Bank of Am., N.A. v. Burt, No. CA06-394S, 2007 WL 1074742, at *3 (D.R.I. Mar. 30, 2007).

III. Discussion

  A. Hybrid Section 301/Duty of Fair Representation Suit

Count I (breach of contract against UPS) and Count II (breach of the duty of fair representation by Local 251) together comprise a hybrid Section 301/duty of fair representation suit under the Labor Management Relations Act § 301, 29 U.S.C. § 185. Chaparro-Febus v. Int'l Longshoreman Ass'n, Local 1575, 983 F.2d 325, 330 (1st Cir. 1992); Graham v. Bay State Gas Co., 779 F.2d 93, 94 (1st Cir. 1985). In such a hybrid suit, "a plaintiff must prove both that the employer broke the collective bargaining agreement and that the union breached its duty of fair representation, in order to recover against either the employer or the union." Chaparro-Febus, 983 F.2d at 330. The actions are "inextricably interdependent," standing or falling as one. Hazard v. S. Union Co., 275 F. Supp. 2d 214, 225 (D.R.I 2003) (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983)). Indeed, "disgruntled employees must first prevail on their unfair representation claim." Ayala v. Union de Tronquistas de Puerto Rico, Local 901, 74 F.3d 344, 346 (1st Cir. 1996). The Court therefore begins with Count II, which alleges that Local 251 breached its duty of fair representation by failing to pursue the grievance process to arbitration.

1. Duty of Fair Representation

    a. Legal Standard

A union breaches the duty of fair representation where its conduct is "arbitrary, discriminatory or in bad faith."[4] Id. (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). Conduct is arbitrary where, "in light of the factual and legal landscape at the time of the union's actions," it is "so far outside a 'wide range of reasonableness' as to be irrational." Miller v. U.S. Postal Serv., 985 F.2d 9, 12 (1st Cir. 1993) (quoting Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991)). Conduct is in bad faith where undertaken with "a reckless disregard for the rights of the individual employee." Hussey v. Quebecor Printing Providence Inc., 2 F. Supp. 2d 217, 224 (D.R.I. 1998) (quoting DeMichele v. Int'l Union of Elec. Radio and Machine Workers (AFL-CIO), 576 F. Supp. 931, 935 (D.R.I. 1983)).

Courts adopt a deferential posture toward union decisions related to the grievance process: "It is for the union, not the courts to decide whether and in what manner a particular grievance should be pursued." Emmanuel v. Int'l Bhd. of Teamsters, Local

---

[4] Smith has apparently abandoned his initial allegation that the Union's decision-making process was infected with discriminatory bias based on his identity as an able-bodied individual. See infra Section III(C). Thus, the Court's analysis focuses primarily on the issues developed by the parties: namely, the reasonableness and good faith character of Local 251's decision to forego arbitration.

10

Union No. 25, 426 F.3d 416, 421 (1st Cir. 2005) (quoting Patterson v. Int'l Bhd. of Teamsters, Local 959, 121 F.3d 1345, 1349-50 (9th Cir. 1997)). Finally, "a union has wide discretion in determining whether or not to pursue a grievance to arbitration." DeLucca v. Nat'l Educ. Ass'n of Rhode Island, 102 F. Supp. 3d 408, 414 (D.R.I. 2015).

    b.  Reasonableness and Good Faith

Local 251 argues that it exercised its discretion in a reasonable, good faith manner. Local 251's Mem. in Supp. of Mot. for Summ. J. and Mot. to Dismiss ("Union Memo") 15-16, ECF No. 13-2. The Union emphasizes that it conducted a careful investigation and rendered a decision based on evidence and supported by law of the shop and past legal and arbitral precedent. See id. at 17-22. Smith counters that the evidence was too sparse and ambiguous to support a reasonable, good faith decision.[5] Pl.'s Mem. of Law

---

[5] Specifically, Smith asserts that the Union's decision was irrational given that: (1) criminal charges were not filed against Smith; (2) neither Thibault nor Medeiros actually saw the touching; (3) Smith's response to Cipriano's exclamation after the touching — "What do you mean why did I hit you?" — could be interpreted as a denial of "intentional or criminal action"; (4) Thibault's and Medieros's statements were "interpreted" by Mertel rather than recorded verbatim; (5) a third UPS employee present that day who (possibly) witnessed the incident was never interviewed; and (6) the potential existence of videotape evidence was left unexplored. Pl.'s Obj. to Local 251 3-5.

    Smith also contends that the Union was bound by the CBA to advance the grievance to the New England Area Parcel Grievance Committee pursuant to Article 48, Section 2(c) of the Supplemental Agreement, and that the failure to do so necessarily constituted arbitrary action. Id. at 6. However, Section 2(c) applies only

in Supp. of Obj. to Mot. for Summ. J. filed by Def. Local 251 ("Pl.'s Union Obj.") 3-5, ECF No. 22-1.  The determinative question, however, is not whether the Union's decision was right, but whether it was reasonable and in good faith.  A court must not "substitute [its] own views for those of the union."  Miller, 985 F.2d at 12.  Even viewed in the light most favorable to Smith, the undisputed facts show that Local 251 did not breach its duty.

The Union not only participated in UPS's investigation, it also reviewed the results of that investigation and undertook its own inquiry into the allegations.  Union SUF ¶¶ 26-28, 40-41, 44-48, 51, 54, 71-75; see Maini Aff. ¶¶ 5, 8-10, 13-14; Salvatore Aff. ¶¶ 5-10, 13; Taibi Aff. ¶¶ 10-12.  Based on its findings – including party statements, witness statements, and Cipriano's disciplinary record - and its careful consideration thereof, the Union determined that Smith had likely transgressed the anti-violence and anti-harassment policies, giving UPS just cause for termination pursuant to Article 59 of the CBA, and rendering arbitration futile.[6]  See Maibi Aff. ¶ 7; Taibi Aff. ¶ 7-8, 13.

---

where the parties (i.e., UPS and the Union) fail to agree on a settlement: here, however, the parties agree that UPS had just cause to terminate Smith.  See Local 251's Reply Mem. in Supp. of Mot. for Summ. J. ("Local 251's Reply") 7, ECF No. 25.  This argument does not merit further analysis.

[6] The actions for which Smith was fired are not listed among the "cardinal offenses" set forth in Article 59, but according to "law of the shop" at UPS, that provision is interpreted as non-exclusive, and violations of either the Workplace Violence

Affording the Union the considerable deference it deserves, this Court cannot say that its decision-making was "so far outside a 'wide range of reasonableness' as to be irrational," Miller, 985 F.2d at 12 (citation omitted), nor that it was taken with "reckless disregard for the rights of the individual employee," Hussey, 2 F. Supp. 2d at 224 (citation omitted).

Smith's arguments as to why the Union breached its duty are largely unpersuasive.[7]  See Pl.'s Union Obj. 3-5.  There is,

---

Prevention Policy or the Professional Conduct and Anti-Harassment Policy can result in termination without prior warning.  Union SUF ¶¶ 21-23.  Based on previous decisions by panels, judges, and arbitrators, Taibi did not believe the Union would prevail if it pursued arbitration.  Taibi Aff. ¶ 13.

Furthermore, the Union seems to have believed that UPS could terminate Smith for any rule violation, given that he was under a "last chance" agreement, beginning April 2015.  Union SUF ¶¶ 57-60; Salvatore Aff. ¶ 3; Union Add. Ex. 12, Smith UPS Personnel File 12-057 ("LAST and final warning").  It is not entirely clear whether a final warning remains in effect indefinitely, given that Article 59 limits the duration of warnings to nine months.  See Union Add. Ex. 2, Supplemental Agreement 207.  In any event, the last chance agreement was not the driving force in the Union's assessment of the merits of Smith's grievance, and regardless, given the legal and factual background, the Union's decision was not arbitrary or taken in bad faith.

[7] First, lack of criminal charges have little bearing on the credibility of Cipriano's account.  Second, while neither Thibault nor Medeiros saw Smith hit Cipriano, it was not irrational for the Union to construe the exchange they overheard as indicating some sort of inappropriate and unwelcome contact.  Third, whether Smith's words can be interpreted as denying "intentional or criminal action" is not germane: the only question is whether the Union reasonably concluded otherwise.  Fourth, although Thibault's and Medeiros's statements were taken down by Mertel, they were witnessed by multiple individuals, who have verified what she wrote.  See Salvatore Aff. ¶¶ 8-9; Maini Aff. ¶ 5.

13

perhaps, something to be said for Smith's objections that the Union neglected to interview a third potential witness[8] and to check if a video camera had captured the incident. However, neither oversight renders the Union's handling of Smith's grievance fatally "perfunctory." Vaca, 386 U.S. at 191. The Union fulfilled its obligation to "conduct at least a 'minimal investigation,'" and its inquiry does not evince "egregious disregard" for Smith's interests. Emmanuel, 426 F.3d at 420. Even assuming, arguendo, that these omissions were negligent or erroneous, "mere negligence or erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12.

Where a union reasonably and in good faith concludes that it cannot "establish a wrongful discharge," and that arbitration would therefore be "fruitless," it has the discretion to abandon the grievance process. See Vaca, 386 U.S. at 193-94. On the undisputed facts, such was the case here.

3. Supposed Existence of Genuine Disputes of Material Fact

Smith contends that two material facts are in dispute: (1) whether Local 251's decision was retaliation against his political activity within the Union; (2) whether his question - "What do you

---

[8] An unnamed individual referred to as "Thibault's helper" was also present that day, but according to Thibault he was looking at his phone when the touching occurred and did not hear anything because he had in earbuds. See Union Add. Ex. 8, Thibault Statement.

14

mean why did I hit you?" - can be understood as a denial of having assaulted Cipriano. Pl.'s Union Obj. 8-10. These ostensible factual disputes are immaterial and therefore do not preclude granting the Union's Motion as to this claim.

It may be that Smith's remark — "What do you mean why did I hit you?" — is susceptible to various plausible interpretations, thus raising a genuine issue that a "reasonable factfinder could resolve it in favor of either party." Oahn Nguyen Chung v. StudentCity.com, Inc., 854 F.3d 97, 101 (1st Cir. 2017) (citation omitted). Nevertheless, it is not a material issue of fact, as it does not "hold[] the potential to change the outcome of the suit," id. (citation omitted), given that the Union's own interpretation was well within the realm of reason, see Miller, 985 F.2d at 12.

As for the alleged retaliation, Smith has not presented "sufficient evidence to generate a trialworthy issue." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). The affidavit attached to his brief simply establishes that, at some point in the past, he and Maini belonged to opposing sides within the sphere of Union politics. However, with respect to actual retaliatory behavior, Smith offers no specifics or details, just insinuation and conjecture. Thus, he fails to demonstrate the existence of a "trialworthy issue". See id.; see also Magee v. United States, 121 F.3 1, 3 (1st Cir. 1997). Indeed, the allegation of

retaliation seems inconsistent with Smith's deposition testimony,[9] making it a classic instance of "attempt[ing] to manufacture an issue of fact in order to survive summary judgment." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006). Finally, it should be noted that the decision to abandon the grievance process was made by Taibi, not Maini. Union SUF ¶ 98.

Given the above, the Court grants Local 251's Motion for summary judgment on Count II.

B.  Breach of Contract

Smith argues that, since his alleged conduct is not among the cardinal offenses enumerated in Article 59 of the Supplemental Agreement, UPS breached the CBA by firing him without just cause. He also contends that summary judgment is precluded by the existence of a factual dispute as to the nature of Smith's touching of Cipriano and the significance of such touching under the CBA. Pl.'s Mem. of Law in Supp. of Obj. to Mot. for Summ. J. filed by

---

[9]
>    Q. As I understand your testimony, and I want to be clear about this, what you're saying is that [what] Mr. Maini didn't do that amounted to misrepresentation were not giving you the witness statements in advance of the grievance hearing and not filing for the next panel hearing?
>    A. Correct.
>    Q. Anything else?
>    A. That's it.

Local 251's Reply Ex A., Smith Dep., ECF No. 25-1.

16

Def., United Parcel Service, Inc. ("Pl.'s UPS Obj.") 1-2, ECF No. 24.  UPS responds, firstly, that since Smith cannot establish his claim against Local 251 for unfair representation, his claim against UPS for breach of contract must fail.  Def. United Parcel Service, Inc.'s Mem. of Law in Supp. of its Mot. for Summ. J. ("UPS Mem.") 13-15, ECF No. 14-1.  It responds, secondly, that even if Smith could demonstrate the predicate breach of duty, UPS fired him for just cause.  Id. at 19-21.

As explained above, in a hybrid Section 301 suit such as this one, an employee cannot prevail on the breach of contract claim without prevailing on the unfair representation claim.  See supra III(A); see also Ayala, 74 F.3d at 346.  Accordingly, Smith's contract claim against UPS must fail.[10]

Therefore, the Court grants UPS's Motion for summary judgment on Count I.

---

[10] Even considered by itself, this claim might warrant summary judgment in UPS's favor.  UPS had reason to believe that Smith had struck and mocked Cipriano.  See generally UPS SUF Ex. 2, Steward Aff., ECF No. 15-2.  According to the undisputed facts, such behavior is punishable by termination without prior warning under the CBA.  Union SUF ¶¶ 21-23; UPS SUF ¶¶ 14, 17.  Moreover, Smith had been subject to a last chance agreement, UPS SUF ¶ 49, and the Union doubted it could secure another such agreement, Union SUF ¶ 77.  In any event, the failure of Smith's unfair representation claim renders a definitive analysis on this question unnecessary.

17

C.  RICRA

UPS and Local 251 argue that they are entitled to summary judgment on the RICRA claims because: (1) these state law claims are preempted, and (2) Smith has not established that he is part of a protected class.  UPS Mem. 21-23; Union Mem. 25-33.  Smith does not address the RICRA claims in either of his objections to the instant Motions.[11]  Nevertheless, the Court gathers that Smith contends that he was unfavorably treated vis-à-vis Cipriano because he is able-bodied, whereas Cipriano is disabled.  See Compl. ¶¶ 40-41, 45-46.

A plaintiff must show that he or she is "disabled within the meaning of the relevant statute" to make out a prima facie RICRA claim.  Poulin v. Custom Craft, Inc., 996 A.2d 654, 658-59 (R.I. 2010); see Mayer v. Prof'l Ambulance, LLC, 211 F. Supp. 3d 408, 420 (D.R.I. 2016).  Smith has not presented any facts — or even any allegations — indicating that he is disabled within the meaning of RICRA.  See R.I. Gen. Laws § 42-87-1.  Quite the contrary: his claims are predicated precisely on his lack of disability.

---

[11] Because Smith has failed to address the RICRA claims, they could be considered waived.  "An issue raised in the complaint but ignored at summary judgment may be deemed waived."  Champlin's Realty Assocs. v. Carcieri, No. C.A.06-135, 2006 WL 2927632, at *4 (D.R.I. Oct. 12, 2006) (quoting Grenier v. Cyanamid Plastics, Inc. 70 F.3d 667, 678 (1st Cir. 1995)).

Therefore, the Court grants summary judgment in favor of UPS and Local 251 on Counts III and IV respectively.

IV. CONCLUSION

Based on the foregoing reasons, Defendant Local 251 of the International Brotherhood of Teamsters' Motion for Summary Judgment, ECF No. 13, is GRANTED. Likewise, Defendant United Parcel Service, Inc.'s Motion for Summary Judgment, ECF No. 14, is GRANTED.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
District Judge
Date: September 14, 2020